**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| DIAMOND GRADING | § | |
| TECHNOLOGIES LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:14-cv-01161-JRG-RSP |
| | § | **JURY TRIAL DEMANDED** |
| AMERICAN GEM SOCIETY, *et al.* | § | |
| | § | |
| *Defendants.* | § | |

---

**RESPONSE TO DEFENDANT AGS'S MOTION TO TRANSFER VENUE**

---

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...............................................................2

III. LEGAL STANDARD ...............................................................................................................2

IV. ARGUMENT .............................................................................................................................3

    A. The Private Interest Factors Do Not Support AGS's Motion ...........................................5

      1.    Relative Ease of Access to Sources of Proof ...............................................................5

         a.    AGS's Employees and Documents Are Located in Nevada ..............................5

         b.    DGT's Evidence Is Located in this District .....................................................5

         c.    Third-Party Evidence Is In Texas or Other Districts .......................................6

         d.    The Third-Party Witnesses Listed by AGS Are Either Not Likely to Provide Relevant Information or Reside in Districts Far from SDCA .....................9

      2.    Availability of Compulsory Process ...........................................................................10

      3.    Cost of Attendance for Willing Witnesses .................................................................11

      4. Other Practical Problems ............................................................................................13

    B. The Public Interest Factors Do Not Support Transfer .....................................................13

      1.    Local Interest ..............................................................................................................13

      2.    Court Congestion ........................................................................................................14

      3.    Familiarity with the Governing Law ..........................................................................14

      4.    Avoidance of Conflicts of Laws .................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) ........... 9

*ICHL, LLC v. NEC Corp. of Am.*, 2009 U.S. Dist. LEXIS 130686, (E.D. Tex. June 2, 2009 ............. 6

*In re Genetech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ................................................................. 11, 12

*In re Google Inc.*, 412 F. App'x 295 (Fed. Cir. 2011) ................................................................. 6, 11

*In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ........................................................ 14

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) ............................................................ 1, 3, 13

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ........................................................ 14, 15

*In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304 (5th Cir. 2008) ..................... 1, 3, 5, 11

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, 2:10–cv–216–JRG, 2012 WL
    462956 (E.D. Tex. Feb. 13, 2012) ............................................................................................. 1, 5

*Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757 (E.D. Tex. 2000). .......................................... 12

*Perritt v. Jenkins*, No. 4:11–cv–23, 2011 WL 3511468 (E.D. Tex. Jul. 18, 2011) ............................. 9

*Sipco, LLC v. Control4 Corp.*, 2011 U.S. Dist. LEXIS 12435 (E.D. Tex. Feb. 8, 2011) ................... 14

*Stambler v. Fifth Third Bancorp*, No. 2:12-CV-00675-JRG, 2013 U.S. Dist. LEXIS 180035 (E.D.
    Tex. Dec. 18, 2013) ................................................................................................................... 12

*Virtualagility, Inc. v. Salesforce.com, Inc.*, 2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014)
    ............................................................................................................................................... 11

## Statutes

28 U.S.C. § 1404 ................................................................................................................... 1, 2, 3

## Rules

Fed. R. Civ. P. 45 ...................................................................................................................... 11

Plaintiff Diamond Grading Technologies LLC ("DGT") files this Response to the Motion to Transfer Venue of American Gem Society ("AGS") and American Gem Society Laboratories, LLC ("AGS Labs" or collectively, "AGS").

## I. INTRODUCTION

The Court should deny AGS's Motion to Transfer Venue Pursuant to § 1404(a). AGS requests this case be transferred to the Southern District of California ("SDCA") a venue that is more 300 miles from AGS's offices, documents, employees, and relevant third-party witnesses. AGS simply has no basis to seek transfer to the SDCA.

A defendant carries the heavy burden of demonstrating that the transferee venue is *clearly* more convenient. *See In re Nintendo Co*., 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*). AGS fails to show that SDCA is any more convenient, much less *clearly* more convenient, than this District.

The party and non-party evidence for this case is located within the Eastern District of Texas, Texas generally, Arizona, Florida, and Nevada. Given this widespread distribution of evidence, SDCA is hardly a clearly more convenient forum.

While no single factor is determinative of the transfer analysis, courts place special emphasis on the convenience of non-party witnesses. *See Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, 2:10–cv–216–JRG, 2012 WL 462956, at *8 (E.D. Tex. Feb. 13, 2012).

In the instant case, the relevant individuals with knowledge of DGT reside in the Eastern District of Texas. The inventor and his business partner reside in Georgia. Two very important

1

third-party witnesses reside in Houston, Texas. Others reside in Irving, Texas. AGS's employees all reside in Las Vegas, Nevada. Its lead optical engineer resides in Arizona and the operations of AGS Labs is purportedly overseen by an individual in Florida. AGS Motion at 2-3. All of AGS's relevant documents are allegedly stored in Nevada. *Id*.

AGS does not, and indeed cannot, cite any specific connection with SDCA other than the fact that GIA has requested a transfer of DGT's case against it to that forum.[1] AGS has failed to carry the heavy burden to show that the SDCA is clearly more convenient than this District.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2014, DGT filed its Complaint against AGS asserting infringement of U.S. Patent No. RE44,963 ("the 'RE963 Patent"). The 'RE963 Patent, titled "System and Method for Computerized Evaluation of Gemstones," is a reissue of U.S. Patent 5,966,673 ("the '673 patent"). Despite being headquartered in Las Vegas, Nevada and having minimal – if any -- connections to the SDCA, AGS has nevertheless filed this motion to transfer venue to the SDCA.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a District court may transfer any civil action to any other District court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing by the movant that the transferee venue is "clearly more convenient" than the venue chosen by the

---

[1] DGT has also filed a related case against Gemological Institute Of America Inc. (collectively "GIA") for infringement of the 'RE963 patent. That case was assigned Civil Action No. 2:14-cv-1162. DGT is responding to the GIA Motion separately.

plaintiff. *See In re Nintendo Co.*, 589 F.3d at 1197; *Volkswagen II*, 545 F.3d at 315 (holding "when the transferee venue is not clearly more convenient, the plaintiff's choice [of venue] should be respected").

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee District. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). If the transferee District is a proper venue, then the court must weigh the relative conveniences of the current District against the transferee District. *Id.* In making that determination, the court considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Volkswagen II*, 545 F.3d at 315.

## IV. ARGUMENT

While DGT does not contest that this action could have been brought in the SDCA (among several other jurisdictions), AGS has not met its burden of proving that it is a clearly more convenient forum. AGS's offices, employees, documents, and records are all located more than

3

300 miles away from SDCA in Las Vegas, Nevada. The relevant third party witnesses identified by AGS reside in Arizona and Florida. AGS has no legitimate connection to SDCA that would support a transfer of venue to that district.

Moreover, DGT's presence in and choice of the Eastern District of Texas is entitled to significant weight and deference. DGT was formed in Texas on November 12, 2010, more than four years before filing this action. *See* Dkt. 22-2. DGT's offices are located in the Eastern District of Texas. Ex. 1, ¶3 (Key Dec.). DGT's direct parent is Acacia Research Group LLC ("Acacia"). Dkt 2; *see also* Ex. 1, ¶4 (Key Dec.). Acacia is a Texas LLC located in this District (in Plano, Texas). *Id*. Individuals with knowledge of DGT, including Marvin Key and Holly Hernandez, work in Plano. *Id*. at ¶9. Since its formation, DGT has been actively engaged in business in the Eastern District of Texas. *Id*. at ¶5.

AGS incorrectly asserts that Acacia is headquartered in Newport Beach, California. AGS Motion at 4 (Dkt. 22). It is surprising that AGS reached this conclusion when Acacia's corporate documents that are easily available for download from the Texas Secretary of State's website clearly show that it is a Texas entity with a principal place of business in the Eastern District of Texas. Acacia's Certificate of Conversion on file with the Texas Secretary of State shows that it was converted into a Texas limited liability company with a headquarters in the Eastern District of Texas on December 23, 2010.[2] Ex. 2 (Texas Sec. of State Record); Ex. 3 (Amendment). AGS's assertion that Acacia's headquarters are located in California are simply wrong.

---

[2] The Certificate of Conversion from 2010 stated that ARG's principal place of business was in Frisco, Texas. ARG's current principal place of business is 2400 Dallas Pkwy #200, Plano, TX 75093. Ex. 1 (Key Dec.). Both locations are in the Eastern District of Texas.

A plaintiff's "decision to file in this District (*i.e.,* plaintiff's choice of forum) 'places a significant burden on [the Moving Defendants] to show good cause for the transfer.'" *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, 2:10–cv–216–JRG, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012) (quoting *Volkswagen II*, 545 F.3d at 314 n.10).  AGS has not met its burden and therefore the Court should deny its motion.

**A. The Private Interest Factors Do Not Support AGS's Motion**

**1.   Relative Ease of Access to Sources of Proof**

*All* of the witnesses employed by AGS reside over 300 miles from SDCA in Las Vegas, Nevada. In contrast, the corporate representatives of DGT and its relevant documents are located in the Eastern District of Texas. The inventor and his business partner reside in Macon, Georgia. Other important third-party witnesses reside in Houston, Texas; Arizona; and Florida. Under these circumstances, this factor weighs against transfer.

**a.   AGS's Employees and Documents Are Located in Nevada**

AGS identified two employees, Peter Yantzer and Jason Quick, who developed the accused technology. AGS Motion at 3. AGS admits that all of its relevant employees, including Yantzer and Quick, reside in Las Vegas, Nevada. *Id.*   Likewise, all of AGS's relevant documents and computer servers are located in Las Vegas, Nevada. *Id.* Further, AGS does not employ any individuals or store any documents in SDCA. *Id.*

**b.   DGT's Evidence Is Located in this District**

DGT is a Texas LLC that was formed on November 12, 2010, and maintains its principal place of business within this District. Dkt. 22-2; Ex. 1, ¶3 (Key Dec.). DGT's direct parent, Acacia

5

Research Group, LLC ("Acacia") is a Texas LLC located Plano, Texas, which is within the Eastern District of Texas. *Id.* at ¶4. The personnel with knowledge of relevant facts regarding DGT and its patent portfolio are Texas residents who work from their offices in Plano, Texas. *Id.* at ¶9. DGT has no officers, directors, or employees who live or work in the Southern District of California. *Id.* "When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis." *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

In addition to these witnesses, DGT maintains a significant number of documents relating to this case in the Eastern District of Texas. These documents include at least six banker's boxes related to the development of the patented technology and the inventor's attempts to commercialize it. Ex. 1 at ¶11 (Key Dec.). Other documents also maintained at DGT's office in the Eastern District of Texas include those relating to DGT's corporate formation, and those reflecting DGT's acquisition of the patent. *Id.* This factor does not support AGS's request to transfer. *ICHL, LLC v. NEC Corp. of Am.*, 2009 U.S. Dist. LEXIS 130686, *22 (E.D. Tex. June 2, 2009)

### c.  Third-Party Evidence Is In Texas or Other Districts

All of the relevant third-party witnesses reside in districts other than SDCA, and two of the most relevant, James H. Stuckey and Gadi Beer, reside in Houston, Texas.

The inventor of the patent, Paul Shannon, resides in Macon, Georgia. Ex. 4 at ¶4 (Shannon Dec.). Mr. Shannon and his business partner, Scott Wilson, formed Diamond Technologies Inc. ("Diamond Technologies") to commercialize the grading technology claimed in the patent. *Id.* They named their diamond grading system the Gemological Visualization System. *Id.* Shannon

was primarily focused on the technology; Wilson handled financing and marketing. *Id*.

The '673 and 'RE963 Patents are an improvement of the methods that were previously used to evaluate the cut of a diamond. Prior to the invention, the world's leading diamond grading firms, AGS and GIA, assigned cut grades based on a diamond's deviation from the proportions and facet pattern of the Tolkowsky cut created in 1919, or subsequent proportions that were considered "ideal." *Id*. at ¶3.

Diamond master graders would visually look at each diamond and assign cut grades based on what they saw and the proportions they measured. *Id*. The invention in the '673 and 'RE963 Patents provided a way to quantify exactly what was seen by the human eye. *Id*. The benefits of the patented invention are enormous. A grade could now be assigned based on an actual scientific performance of the light and not be limited to what was perceived to be an "Ideal" cut diamond. *Id*.

One of the first opportunities for their fledgling company came from Leo Schachter Diamonds in New York. *Id*. at ¶5. Schachter hired Diamond Technologies to grade and market several new diamond cuts for using the Gemological Visualization System based on the patented technology. *Id*. According to its website, Mr. Schachter's company has offices in New York and overseas, but does not have any offices in SDCA. Ex. 5 (Schachter Website).

Two of the largest retailers of diamonds certified by the inventor and sold by Schachter were Zales and Gordon Jewelers. *Id*. at ¶6. These companies, which appear to be sister corporations, are located in Irving, Texas. Ex. 6 (Zales); Ex. 7 (Gordons).

In 2004, Diamond Technologies was contacted by Gemworld International Lab, a new

diamond grading lab in New York. *Id.* at ¶7. Shannon developed an automated grading system for Gemworld International Lab using the patented technology. *Id.* The first major customer of Gemworld International Lab, and therefore the first major customer of grades using the patented technology, was Stuckey Diamonds, Inc., located in Houston, Texas. *Id.*

Perhaps the two most important third-party witnesses (other than the inventor) are James Stuckey and Gadi Beer of Houston, Texas. Mr. Stuckey was an owner of Stuckey Diamonds, Inc., a Texas corporation with a principal place of business in Houston. *Id.* at ¶8. Stuckey Diamonds contracted with Diamond Technologies to create a new cut that could be manufactured from 58 faceted round diamonds. *Id.* The cut was to be marketed by Gadi Beer, a prominent jewelry designer, who also resided in Houston. *Id.* Diamond Technologies used its patented technology to assist with the production of the "Lovemark" diamond for Stuckey. *Id.* As part of the agreement, the Lovemark diamond was graded by the new Gemworld International Lab in New York using the patented technology. *Id.* Shannon's patented system was also used to analyze the diamonds before they were purchased by Stuckey to ensure they met certain standards. *Id.*

During this period, however, AGS and GIA began to offer competing cut grades that copied the patented technology. *Id.* at ¶9. Their new methods were not limited to a simple comparison of a diamond with the proportions of the Tolkowsky cut as had been done in the past. *Id.* Instead they used software to evaluate the gemstone along a three dimensional plane. *Id.* As a result, Stuckey Diamonds found that it had difficulty competing against diamonds that had been graded by one of these larger and more established firms. *Id.* Consequently, in 2005, it shifted its grading business from Gemworld to defendant AGS. *Id.* Gemworld ultimately closed its New York office although

8

its owner, Richard Drucker, still operates on a small scale in Chicago, Illinois. *Id.*

Information from Schacter, Diamond Technologies, Stuckey, Beer, Zales, Gordon Jewelers, and Drucker will be relevant in establishing a reasonably royalty under many of the familiar *Georgia Pacific* factors.[3] These would include:

- Established profitability of the products made under the patent, its commercial success and its current popularity;

- Utility and advantages of patent property over old modes and devices;

- Nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefit of those who have used the invention;

- Extent to which the infringer has made use of the invention and the value of such use;

- Portion of profit or selling price customarily allowed for the use of the invention;  and,

- Portion of realizable profit attributable to the invention as distinguished from nonpatented elements, significant features, improvements added by the infringer, the manufacturing process or business risks.

Where, as here, "the sources of proof originate from varied locations, this factor is neutral."

*Perritt v. Jenkins*, No. 4:11–cv–23, 2011 WL 3511468, at *3 (E.D. Tex. Jul. 18, 2011).

### d. The Third-Party Witnesses Listed by AGS Are Either Not Likely to Provide Relevant Information or Reside in Districts Far from SDCA

The only witness AGS could manage to locate anywhere close to SDCA was a *former* employee who worked on the accused technology that it believes *may* now work in San Bernardino, California based on a review of his LinkedIn profile. AGS Motion at 3. San

---

[3] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

9

Bernardino is not in the Southern District of California and is more than 100 miles from the courthouse in the SDCA. Moreover, it is *extremely unlikely* that this former employee will be called upon to provide documents or testimony in this case. Two of the individuals who developed the accused technology for AGS are still employed by AGS and reside in Nevada. *Id*.

AGS also listed the law firm that prosecuted the patent as having offices in "California, Washington State, Oregon, and Colorado." *Id*. at 5. AGS did not identify any specific individual that resides near to SDCA, nor did it explain why information from this law firm is likely to be necessary. In the vast majority of patent infringement cases the prosecuting attorney is never deposed and is even less likely to be called as a witness at trial.

AGS also suggested that Acacia Research Corp., Acacia's parent company, is a potential third-party witness located in California. Acacia Research does not employ any individuals with relevant knowledge, nor is it in possession of any documents relating to this case. Individuals with relevant knowledge are Marvin Key, the CEO of DGT, and Holly Hernandez, who is the person in charge of managing all aspects of the patent portfolio for DGT. Both of these individuals work at DGT's offices in the Eastern District of Texas. Moreover, all of the relevant documents are stored at DGT's office in Plano, Texas.

### 2.  Availability of Compulsory Process

Under Rule 45(c)(1)(A), neither this Court nor the SDCA may command all identified non-party witnesses to attend trial. Both courts, however, may command these witnesses to attend and be subject to being deposed. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). "The proper inquiry, under newly amended Rule 45, is then how much, if at all, Defendants might be inconvenienced by

having to rely on depositions as opposed to live attendance at trial." *Virtualagility, Inc. v. Salesforce.com, Inc.*, 2014 U.S. Dist. LEXIS 12015, *15-19 (E.D. Tex. Jan. 31, 2014). In the instant case, AGS can secure the deposition testimony of all the non-party witnesses it has identified and introduce this testimony at trial if necessary. This factor weights against transfer. *Id*.

### 3.   Cost of Attendance for Willing Witnesses

The Fifth Circuit recognizes that the "factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *See Volkswagen I*, 371 F.3d at 205. It is well established, however, that a particular witness who will be required to travel "a significant distance no matter where they testify," is discounted for purposes of the 100-mile-rule analysis. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009).

AGS's witnesses should be discounted because they would have to travel a significant distance to testify in either District. *See* AGS Motion at 2. In contrast, DGT has identified at least two individuals who have relevant knowledge that are located in the Eastern District of Texas. Any inconvenience of litigating in this District would only be shifted to the witnesses of DGT if the case is transferred to California. *See In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.,* 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Most of the likely third-party witnesses reside in Districts that are closer to the Eastern District of Texas. The inventor and his business partner, Scott Wilson, both reside in Georgia. James Stuckey and Gadi Beer reside in Houston. The Zale Corporation and

11

Gordon Jewelers are located in Irving, Texas. Leo Schachter resides in New York. Richard Drucker resides in Illinois.

AGS identified two relevant non-party witnesses, one of whom resides in Arizona and the other who resides in Florida. AGS Motion at 3. Both of these witnesses would have to travel a significant distance either way and should, therefore, be discounted for the purposes of the analysis. *In re Genentech,* 566 F.3d at 1344. Moreover, AGS is incorrect in arguing that frequent *travel* to a proposed district (or lack of travel to the current district) is relevant in any way. The fact that a witness may frequently travel to a given district has no bearing on the analysis.

AGS posits that the "same circumstances exist here" as in *Stambler v. Fifth Third Bancorp*, No. 2:12-CV-00675-JRG, 2013 U.S. Dist. LEXIS 180035 (E.D. Tex. Dec. 18, 2013), where "at least one of the party's witnesses would be 'subjected to considerably less inconvenience and expense'" in the transferee district. AGS Motion at 8 (citing *Stambler*, 2013 U.S. Dist. LEXIS 180035 at *8-9). But AGS takes a passage from *Stambler* out of context to suggest that the Southern District of California would subject its non-resident witnesses to "considerably less inconvenience and expense." In *Stambler*, the defendants' witnesses *all resided in the transferee district. See Stambler,* 2013 U.S. Dist. LEXIS 180035 at *8-9. "Fifth Third employees relevant to this case live in the Southern District of Ohio … If the case is transferred to the Southern District of Ohio, however, Fifth Third witnesses will be subjected to considerably less inconvenience and expense."

As noted above, relevant witnesses are located in Texas, Georgia, Nevada, Arizona, Florida, Illinois, and New York.  The dispersion of the relevant witnesses between these various

locales is a fact that disfavors transfer. *See Motiva LLC v Nintendo Co. Ltd*, No. 6:08-cv-429, 2009 WL 1882836, at *5 (E.D. Tex. Jun. 30, 2009) ("Where neither party has particularly identified a 'substantial number' of witnesses residing in either [the proposed transferee or current District], this factor does not automatically favor transfer.").

### 4. Other Practical Problems

AGS claims that judicial economy would be served by transferring both this case and the case against GIA to the same District. First, applying the logic of AGS's argument, judicial economy is equally served by declining to transfer this case to SDCA and keeping it in this District, along with the companion suit against GIA that is also pending in this District. Moreover, GIA and AGS misstate the law relating to judicial economy. When two related patent infringement suits are in their infancy and the Court lacks familiarity with the patents-in-suit (as is the case here) judicial economy is not served by keeping the cases together in the same District. *See Sipco, LLC v. Control4 Corp.*, 2011 U.S. Dist. LEXIS 12435, *3 (E.D. Tex. Feb. 8, 2011) (finding the existence of co-pending suit in its infancy that has yet to have a scheduling conference does not necessarily implicate judicial economy). Accordingly, this factor should be viewed as neutral.

### B. The Public Interest Factors Do Not Support Transfer

### 1.   Local Interest

In a patent case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular District. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). Local interest may exist when a District is home to a party because the suit may call into question the reputation of individuals that work and conduct business

13

in the community. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). DGT and its direct parent, Acacia, are located within this District. Moreover, Acacia employees who were directly involved in the prosecution of the re-issue patent are Texas residents.  Thus, this District has a local interest.

AGS's claims about local interest are difficult to understand. It claims that trade shows for the jewelry industry are concentrated in the Western states, but it goes on to cite trade shows in Dallas and San Antonio, Texas. AGS Motion at 4. AGS also argues that the location of GIA's headquarters in California gives the SDCA a local interest in this case against AGS. As noted above, however, the individuals whose reputations may be at stake *in this litigation*, including the inventor, his business partner, and *the witnesses employed by AGS*, reside in Texas, Georgia and Nevada. This factor either weighs against transfer or is at best neutral.

### 2.   Court Congestion

As noted by AGS, the Federal Court Management Statistics show that the time to trial in SDCA is 32.5 months and the time to trial for the Eastern District of Texas is 22.9 months. See Exhibit 8 (Federal Court Management Statistics). This is a significant difference of almost one year between the two Districts. Accordingly, this factor weighs against transfer.

### 3.   Familiarity with the Governing Law

Both the Southern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

### 4.   Avoidance of Conflicts of Laws

14

There are no perceived conflict of law issues, and thus this factor is neutral.

**V. CONCLUSION**

The balance of private and public interest factors either weighs in favor of this District or are neutral. In either case, as AGS bears the burden to show that the SDCA is clearly more convenient, it has failed to satisfy this burden and the motion to transfer should be denied.

Respectfully submitted,

By: */s/ Steven N. Williams*
**Steven N. Williams**
swilliams@mcdolewilliams.com
Texas Bar No. 21577625
**Kenneth P. Kula**
kkula@mcdolewilliams.com
Texas Bar No. 24004749
**William Z. Duffy**
zduffy@mcdolewilliams.com
Texas Bar No. 24059697
**McDOLE WILLIAMS**
A Professional Corporation
1700 Pacific Avenue, Suite 2750
Dallas, Texas 75201
(214) 979-1122 - Telephone
(214) 979-1123 – Facsimile

**ATTORNEYS FOR PLAINTIFF**
**DIAMOND GRADING TECHNOLOGIES LLC**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document is being served on all counsel of record via CM/ECF.

*/s/ Diane Page*
Diane Page

16