IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIAMOND GRADING TECHNOLOGIES INC. | § § § § § § | Case No. 2:14-cv-1161-RWS-RSP LEAD CASE |
| v. | | Case No. 2:14-cv-1162-RWS-RSP |
| AMERICAN GEM SOCIETY, ET AL. | | |

## MEMORANDUM ORDER

Before the Court is AGS's[1] Motion to Transfer Venue. (Dkt. No. 22 in Case No. 2:14-cv-1161).[2] Also before the Court is GIA's[3] Motion to Transfer Venue. (Dkt. No. 22 in Case No. 2:14-cv-1162). Both Defendants request transfer to the Southern District of California under 28 U.S.C. § 1404(a). Plaintiff[4] opposes transfer.

## I. LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first step in a Court's transfer analysis is deciding "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

---

[1] "AGS" refers to Defendants American Gem Society and American Gem Society Laboratories, LLC in Case No. 2:14-cv-1161.

[2] Unless otherwise indicated, citations to the docket are to the Lead Case No. 2:14-cv-1161. Citations to the docket use CM/ECF page numbers.

[3] "GIA" refers to Defendant Gemological Institute of America Inc. in Case No. 2:14-cv-1162.

[4] "Plaintiff" or "DGT" refers to Diamond Grading Technologies Inc.

If that threshold is met, the Court then analyzes public and private factors relating to the convenience of parties and witnesses and the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]" and "are to be decided based on 'the situation which existed when suit was

instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Doc. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## II. FACTS

Plaintiff DGT is a Texas limited liability company formed November 12, 2010. (Dkt. No. 25-2 at ¶ 3). DGT's principal place of business is in Plano, Texas in the Eastern District of Texas. (*Id.*) DGT's parent company, Acacia Research Group LLC,[5] is also a Texas limited liability company with its principal place of business in Plano. (*Id.* at ¶ 4). All of DGT's corporate records, along with "least six banker's boxes related to the development of the patented technology and the inventor's attempts to commercialize on it" are stored at DGT's headquarters in Plano. (*Id.* at ¶ 11).

The inventor of the patent, Paul Shannon, resides in Macon, Georgia. (Dkt. No. 25-5 at ¶ 4). Mr. Shannon—with business partner Scott Wilson who also resides in Macon, GA—formed a company named Diamond Technologies Inc. (*Id.*). Diamond Technologies did business with a number of third parties as part of its efforts to commercialize Mr. Shannon's invention. These third parties include Leo Schachter Diamonds of New York; Zales Corporation and Gordon Jewelers of Irving, Texas; Gemworld International Lab of New York; Stuckey Diamonds, Inc. of Houston, Texas; Gadi Beer of Houston, Texas; and Richard Drucker of Chicago, Illinois. (*Id.* at 5–9).

Defendant AGS is a not-for-profit jewelry trade association with members across the country, including both California and Texas. (Dkt. No. 22-1 at ¶¶ 4, 6). AGS is headquartered in

---

[5] The parent of Acacia Research Group LLC is Acacia Research Corporation, which is located in Newport Beach, California. (Dkt. No. 26-1). However, no party has identified any specific documents or witnesses located in Newport Beach.

Las Vegas, Nevada and has no offices elsewhere. (*Id.* at ¶ 3). All of AGS's servers and paper documents are located in Las Vegas. (*Id.* at ¶ 10). All of AGS's employees reside in Nevada. (*Id.* at ¶¶ 5, 9). AGS employees "regularly attend jewelry industry trade shows" in Arizona, Florida, Georgia, Nevada, New York, and Texas. (*Id.* at ¶ 11).

AGS identifies several former employees who were involved in developing the accused technology as potential third party witnesses: Jason Flatt (believed to reside in Las Vegas), James Caudill (believed to reside in Las Vegas), and Jacob Sheffield (believed to reside in Big Bear Lake, California). (Dkt. No. 22-4). AGS further identifies Clayton Bromberg, a member of the American Gem Society Laboratories advisory committee who "serves on a purely volunteer basis," as a potential third party witness; Mr. Bromberg resides in Jacksonville, Florida. (Dkt. No. 22-3). AGS also "utilize[s] the services of Dr. Jose Sasian" as "lead optical engineer"; he resides in Tucson, Arizona. (Dkt. No. 22-1 at ¶ 8).

Defendant GIA is a nonprofit institute dedicated to research and education in the field of gemology; it is headquartered in Carlsbad, California in the Southern District of California. (Dkt. No. 22-16 at ¶ 2 in Case No. 2:14-cv-1162). "More than 70%" of GIA's U.S. employees work at GIA's headquarters in Carlsbad. (*Id.*). The remainder are "based in various locations, including Arizona, Idaho, Illinois, Massachusetts, Montana, New York, New Jersey, Washington, and Washington, D.C." (*Id.*). "The vast majority of documents" relating to GIA's accused Diamond Cut Grading System are located in Carlsbad, and the Accused System was developed there. (*Id.* at ¶ 5, 9). At least one GIA employee who was "heavily involved in developing GIA's Diamond Cut Grading System" resides in Chicago, Illinois. (Dkt. No. 22-15 in Case No. 2:14-cv-1162). Another "heavily involved" employee resides in Lexington, Massachusetts. (Dkt. No. 22-14 in Case No. 2:14-cv-1162).

GIA identifies two former employees who were involved in developing the accused technology as potential third party witnesses: Barak Green and Mary L. Johnson, both believed to reside in San Diego, CA. (Dkt. No. 22-16 at ¶ 8 in Case No. 2:14-cv-1162).

AGS and GIA identify Blakely, Sokoloff, Taylor & Zafman, LLP ("BSTZ") as a potential third party witness because this firm prosecuted the patent-in-suit. (Dkt. No. 22 at 8; Dkt. No. 22 at 9 in Case No. 2:14-cv-1162). Defendants argue BSTZ is "mostly on the West Coast" but do not identify the location of any specific documents or witnesses. (Dkt. No. 22 at 8).

AGS and GIA each identify the other as a potential third-party witness. *See* (Dkt. No. 22 at 11; Dkt. No. 22 at 10 in Case No. 2:14-cv-1162).

## III. ANALYSIS

No party disputes that venue is proper in both the Eastern District of Texas and in the Southern District of California. Accordingly, the Court turns to the public and private factors to determine whether transfer is warranted for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

### A. American Gem Society

**1. Private Interest Factors**

*a. Relative Ease of Access to Sources of Proof*

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Federal Circuit has emphasized that the physical location of evidence remains an important

consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be "superfluous." *See id.* at 1345.

All of AGS's evidence is located in Las Vegas. Las Vegas is somewhat more proximate to the Southern District of California than the Eastern District of Texas—roughly 300 miles from the Southern District of California and 1,300 miles from the Eastern District of Texas. All of Plaintiff's evidence is located in Plano, Texas in this District. AGS argues that the location of Plaintiff's evidence is "an artifact of litigation" and should be ignored. (Dkt. No. 22 at 10). But DGT was formed over four years before this case was filed and AGS cites no evidence to suggest that the location of DGT or its documents was procured for purposes of litigation.

It is also likely that third parties possess some relevant evidence. Plaintiff DGT emphasizes the importance of third party witnesses in Houston, Texas as possessing evidence relevant to damages. (Dkt. No. 25 at 11). AGS identifies the BSTZ law firm as "most likely in possession of documents relevant to claim construction" (but does not specify the location of these documents). (Dkt. No. 26 at 3). AGS also identifies former employee Jacob Sheffield as potentially possessing relevant documents; he is "located nearer the Southern District of California." (*Id.* at 2).

Relevant sources of proof are located in this District and likely exist elsewhere in Texas. AGS does not identify any specific sources of proof located in the Southern District of California, but does identify a substantial corpus of evidence more proximate to California than to Texas. Accordingly, this factor disfavors transfer, but only slightly.

### b. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech*, 566 F.3d at 1342. In assessing this factor, the Court considers the convenience of the party and non-party witnesses. The convenience of the non-

consideration in the venue analysis irrespective of the ease with which it can be remotely accessed; else this factor would be "superfluous." *See id.* at 1345.

All of AGS's evidence is located in Las Vegas. Las Vegas is somewhat more proximate to the Southern District of California than the Eastern District of Texas—roughly 300 miles from the Southern District of California and 1,300 miles from the Eastern District of Texas. All of Plaintiff's evidence is located in Plano, Texas in this District. AGS argues that the location of Plaintiff's evidence is "an artifact of litigation" and should be ignored. (Dkt. No. 22 at 10). But DGT was formed over four years before this case was filed and AGS cites no evidence to suggest that the location of DGT or its documents was procured for purposes of litigation.

It is also likely that third parties possess some relevant evidence. Plaintiff DGT emphasizes the importance of third party witnesses in Houston, Texas as possessing evidence relevant to damages. (Dkt. No. 25 at 11). AGS identifies the BSTZ law firm as "most likely in possession of documents relevant to claim construction" (but does not specify the location of these documents). (Dkt. No. 26 at 3). AGS also identifies former employee Jacob Sheffield as potentially possessing relevant documents; he is "located nearer the Southern District of California." (*Id.* at 2).

Relevant sources of proof are located in this District and likely exist elsewhere in Texas. AGS does not identify any specific sources of proof located in the Southern District of California, but does identify a substantial corpus of evidence more proximate to California than to Texas. Accordingly, this factor disfavors transfer, but only slightly.

### b. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech*, 566 F.3d at 1342. In assessing this factor, the Court considers the convenience of the party and non-party witnesses. The convenience of the non-

party witnesses carries the greatest weight in the analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should [also] assess the relevance and materiality of the information the witness may provide" but should not require the movant to identify "key witnesses," or show "that the potential witness has more than relevant and material information." *In re Genentech*, 566 at 1343–44.

AGS's party witnesses are located primarily in Las Vegas, Nevada. DGT's CEO, a potential party witness, is located in this District. The inventor resides in Macon, Georgia. Other non-party witnesses identified by Plaintiff reside in New York; Chicago; Houston; and Irving, Texas. Non-party witnesses identified by Defendant reside in Las Vegas; Jacksonville, Florida; Tucson, Arizona; and Big Bear Lake, California.

Of these witnesses, the inventor and AGS's employees are likely to provide the most important testimony. They will likely have knowledge relevant to issues such as infringement and damages. The inventor and his business partner are significantly more proximate to this District than to the Southern District of California. The AGS party witnesses are significantly more proximate to the Southern District of California than to this District.

In light of the wide dispersion of party and non-party witnesses and the fact that no important witnesses seem to be located in either the proposed transferee or transferor districts, this factor is neutral.

### c. Availability of Compulsory Process to Secure the Attendance of Witnesses

The Court may command a person who "resides, is employed, or regularly transacts business in person" in Texas to attend trial in Marshall if she "would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). The Court also may command a person to attend a

deposition at a location "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45 (a)(2); *see id.* (c)(1)(A), (d)(3)(a). Party witnesses normally do not require compulsory process. The Court's analysis of this factor therefore focuses on third-party witnesses. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009).

The parties appear to agree that the vast majority of third-party witnesses are outside the subpoena power of both the transferee and transferor districts. AGS argues that the BSTZ law firm would be amenable to process in the Southern District of California because it has an office within 100 miles of the courthouse. AGS also argues that GIA is amenable to process in the Southern District of California.

It is not evident that compulsory process will be required to secure the attendance of these parties. In particular, GIA and AGS may be capable of voluntarily securing one another's attendance at trial. AGS also has not explained precisely what evidence it expects these parties to provide. It is especially difficult to ascertain what non-privileged evidence the BSTZ law firm may possess; AGS mentions only "claim construction" evidence. (Dkt. No. 26 at 3).

Moreover, "the amended Rule 45(a)(2) makes it clear that the presiding court may issue nationwide deposition subpoenas so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business. . . . The proper inquiry, under newly amended Rule 45, is then how much, if at all, Defendants might be inconvenienced by having to rely on depositions as opposed to live attendance at trial." *Virtualagility, Inc. v. Salesforce.com, Inc.*, Case No. 2:13-cv-11-JRG, 2014 U.S. Dist. LEXIS 12015 at *14–18 (E.D. Tex. Jan. 31, 2014). AGS does not identify any prejudice it would suffer from relying on the depositions of these non-parties.

Nonetheless, the fact that compulsory process is at least theoretically available in the Southern District of California for these two witnesses is a factor that marginally favors transfer.

> *d. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

"We have held that the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. . . . Judicial economy may be served even when two related cases before the same court may not involve the same defendants and accused products." *In re Vicor Corp.*, 493 Fed. Appx. 59, 61 (Fed. Cir. 2012) (citations omitted); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("it is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result") (citations omitted).

This factor neither inherently favors nor disfavors transfer. However, it strongly favors keeping both consolidated cases together in the same district. Both cases involve the same asserted patent and many common questions of law and fact, including common issues relevant to claim construction, validity, and damages. There will be judicial economy advantages if the same district court handles both cases and judicial economy disadvantages if the cases are litigated in different courts.

**2. Public Interest Factors**

> *a. Local Interest in Having Localized Interests Decided at Home*

To the extent this case involves any "localized interest," it is local to the Eastern District of Texas. Plaintiff is located in the Eastern District of Texas and AGS is not located in the Southern District of California.

AGS argues that "trade shows for the jewelry industry are concentrated in the Western states" and that this establishes a localized interest in California. (Dkt. No. 22 at 13). But AGS's declaration identifies two industry trade shows in Texas (Dallas, San Antonio) and zero in California. (Dkt. No. 22-1 at ¶ 11). AGS also argues its closer proximity to California than to Texas creates a localized interest in California.

The Court finds a slightly greater localized interest in the Eastern District of Texas. This factor slightly disfavors transfer.

*b. Administrative Difficulties Flowing From Court Congestion*

As AGS correctly argues, "[t]he court congestion factor generally 'favors a district that can bring a case to trial faster.'" (Dkt. No. 22 at 13) (citing *In re Genentech*, 566 F.3d at 1347). AGS cites Federal statistics that the Eastern District of Texas has an average time to trial of 22.9 months and the Southern District of California has an average time to trial of 32.5 months. (*Id.* at 13 n.4). However, AGS argues this factor is neutral because these statistics "only give a speculative view, at best."

It is undisputed that the Eastern District of Texas has a somewhat faster time to trial than the Southern District of California. This factor disfavors transfer.

*c. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree this factor is neutral. (Dkt. No. 22 at 14; Dkt. No. 25 at 17).

**B.  Gemological Institute of America**

**1. Private Interest Factors**

*a. Relative Ease of Access to Sources of Proof*

"The vast majority" of GIA's evidence is located in the Southern District of California. Some GIA evidence is likely also located in Chicago, Illinois and Lexington, Massachusetts where employees "heavily involved" in developing the accused system reside.

As discussed *supra*, Plaintiff's evidence is located in this district and Plaintiff has emphasized the importance of third-party evidence located in Houston, TX.

Because the location of Defendant's evidence weighs most heavily in the analysis, this factor favors transfer.

*b. Cost of Attendance for Willing Witnesses*

GIA's party witnesses are located predominantly in the Southern District of California, but at least two important party witnesses are located in in Chicago, Illinois and Lexington, Massachusetts. GIA's identified non-party witnesses (two former employees) are also in the Southern District of California. Third-party AGS is located in Las Vegas, and the third party BSTZ law firm has multiple offices across the country, though none in this District or the Southern District of California. DGT also notes that "many of GIA's witnesses are located in Massachusetts, Illinois, and New York." (Dkt. No. 25 at 15 in Case No. 2:14-cv-1162).

As discussed in more detail *supra*, the inventor and his business partner reside in Macon, Georgia. Other non-party witnesses identified by Plaintiff reside in New York; Chicago; Houston; and Irving, Texas. Of these, Plaintiff has emphasized the importance of the Houston, Texas based witnesses to its damages case.

As above, the inventor and Defendant's employees are likely to be the most important witnesses. The location of the other third party witnesses is also entitled to some significant weight in the analysis. *See Aquatic Amusement*, 734 F. Supp. at 57. Most of GIA's party witnesses are in the Southern District of California. Most third party witnesses are located

outside the Southern District of California, and most of these third-party witnesses are more proximate to East Texas than to Southern California.

While transferring would reduce the burden for some witnesses, it would proportionally increase the burden for others, particularly third parties. *See In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011). In light of the weight afforded to the convenience of third-party witnesses, the Court finds this factor is neutral.

### *c. Availability of Compulsory Process to Secure the Attendance of Witnesses*

Like AGS, GIA only identifies a few witnesses who would be subject to the subpoena power of the Southern District of California: the BSTZ law firm and former GIA employees Barak Green and Mary L. Johnson. GIA does not identify what specific evidence these witnesses are expected to offer or why compulsory process will be needed to secure their attendance.

Moreover, compulsory process is available in either district to secure the depositions of these witnesses. Fed. R. Civ. P. 45(c)(1)(A). GIA identifies no prejudice it would suffer from the use of deposition testimony; GIA merely states that "live testimony at trial is preferred." (Dkt. No. 26 at 4 in Case No. 2:14-cv-1162).

Nonetheless, the availability of compulsory process in the Southern District of California is a factor that marginally favors transfer.

### *d. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

The effect of this factor is the same as discussed *supra* with respect to AGS. This factor favors adjudicating both cases in the same district, but does not inherently favor or disfavor transfer.

### 2. Public Interest Factors

#### a. Local Interest in Having Localized Interests Decided at Home

GIA is located in the Southern District of California, and the development of its allegedly infringing activities appears to have been largely localized to that area. As discussed supra, DGT is located in this District, creating a localized interested here. The invention of the patent-in-suit occurred in Georgia. The alleged infringement occurs nationwide.

On balance, the Court finds that an equal degree of localized interest exists in both this District and in the Southern District of California. This factor is neutral.

#### b. Administrative Difficulties Flowing From Court Congestion

For the reasons set forth *supra*, this factor slightly disfavors transfer.

#### c. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties agree this factor is neutral. (Dkt. No. 22 at 17; Dkt. No. 25 at 17–18; both in Case No. 2:14-cv-1162).

## IV. CONCLUSION

A motion to transfer venue should only be granted upon a showing that the proposed transferee venue is "clearly more convenient." *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech*, 566 F.3d at 1342.

Weighing the evidence as a whole, AGS has not met its burden to show that the Southern District of California is "clearly more convenient." Only one factor favors transfer (and only slightly), three slightly disfavor transfer, and the rest are neutral.

Although GIA has made a stronger showing than AGS, it has likewise failed to meet its "clearly more convenient" burden when considering the evidence as a whole. One factor favors transfer, another very slightly favors transfer, one slightly disfavors transfer, and the rest are

neutral. Even if GIA could have met its burden, judicial economy would strongly counsel against transfer—the closely-related infringement action against AGS would remain pending in this District.

For the foregoing reasons, AGS's Motion to Transfer (Dkt. No. 22 in Case No. 2:14-cv-1161) is **DENIED**. GIA's Motion to Transfer (Dkt. No. 22 in Case No. 2:14-cv-1162) is **DENIED**.

**Signed this date.**
**Mar 31, 2016**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE