IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DIAMOND GRADING TECHNOLOGIES INC. | § § § § § § § | Case No. 2:14-cv-1161-RWS-RSP LEAD CASE Case No. 2:14-cv-1162-RWS-RSP |
| v. | | |
| AMERICAN GEM SOCIETY, et al. | | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant GIA's[1] Motion for Judgment on the Pleadings that U.S. Patent No. RE44,963 claims ineligible subject matter under 35 U.S.C. § 101. Dkt. No. 46.

Defendants American Gem Society and American Gem Society Laboratories, LLC filed a notice of joinder in GIA's Motion. Dkt. No. 52. However, AGS and AGSL were dismissed from this action June 27, 2016. Dkt. No. 72. Accordingly, AGS and AGSL's Notice of Joinder (Dkt. No. 52) is **DENIED AS MOOT**.

For the reasons set forth herein, the Court **RECOMMENDS** that GIA's Motion for Judgment on the Pleadings (Dkt. No. 46) be **DENIED** and that GIA be granted leave to file a motion for summary judgment on § 101 grounds.

**I. LAW**

    **A. Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "Rule 12(b)(6)

---

[1] Gemological Institute of America, Inc.

decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Id.* at 313 n.8.

A court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Subject Matter Eligibility

Section 101 of the Patent Act defines what is eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as a patent-ineligible a claim that recited components that "relate[d] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369. However, when performing this step, the Court "cannot simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. May 12, 2016).

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The

second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."); *BASCOM Global*

4

*Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 at *15 (Fed. Cir. June 27, 2016) ("some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the Alice analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible"); *but see Enfish*, 822 F.3d at 1335 ("We do not read Alice to broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two."). A claim, however, remains patent-ineligible if it describes only "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

"The question of eligible subject matter must be determined on a claim-by-claim basis." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1340 (Fed. Cir. 2013) *vacated on other grounds* 134 S. Ct. 2870 (2014).

## II. ANALYSIS

GIA argues that the asserted claims[2] of the '963 Patent are directed to ineligible subject matter under § 101 and GIA moves for judgment on the pleadings under Fed. R. Civ. P. 12(c). An important facet of GIA's Motion is its contention that "each step of the claimed methods can be performed by a person with pen and paper using basic ray tracing techniques while following well-known mathematical formulas." Dkt. No. 46 at 16.[3] GIA attaches as Exhibit D a document purporting to demonstrate how one could practice claim 1 of the '963 Patent using only pen and paper. Dkt. No. 46-5. Methods that "can be performed in the human mind, or by a human using a pen and paper" are generally unpatentable abstract ideas. *See CyberSource Corp. v. Retail*

---

[2] Claims 1, 17, 55, 76, 79, 80, 82, 83, 85, 88, 94, 98, 114, and 120 (independent method claims); and Claims 34, 35, and 53 (independent system claims). *See* Dkt. No. 46 at 7–8.

[3] Citations to the docket use the page numbers assigned by the Court's CM/ECF system.

*Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Plaintiff DGT[4] responds by identifying several alleged shortcomings in GIA's Exhibit D and by arguing that the invention on the '963 Patent uses a three-dimensional beam model that cannot be represented on paper, not ray tracing. Dkt. No. 53.

"[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (vacated on other grounds); *see also Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("This legal conclusion may contain underlying factual issues."). Whether conventional ray-tracing techniques can be used to practice the '963 Patent with a pen and paper is an example of an important fact question that can arise in the § 101 analysis. Resolving this fact question (or even considering it) would require the Court to consider evidence outside the pleadings (including GIA's Exhibit D). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Accordingly, the Court believes that GIA's motion must be resolved at the summary judgment stage.

There are three additional reasons why the Court believes summary judgment is the most appropriate procedural posture in which to rule on GIA's requested relief.

*First,* DGT argues that claim construction is necessary because certain terms—*e.g.* "computerized gemstone model" in claim 1—render the claims patent-eligible by requiring a specialized computer or a specialized data structure. Resolution of these claim construction

---

[4] Diamond Grading Technologies, Inc.

issues may require the "resolution of subsidiary factual matters" that go beyond the pleadings, for example, determining the knowledge of one of ordinary skill in the art. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 836 (2015). This Court has held that "definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule." *Certified Measurement, LLC v. Centerpint Energy Houston Elec. LLC*, No. 2:14-CV-627-RSP, 2015 U.S. Dist. LEXIS 39821, at *4-5 (E.D. Tex. Mar. 29, 2015). "While handling the issue of section 101 eligibility at the pleading stage is permissible, those issues are often inextricably tied to claim construction." *Phoenix Licensing, L.L.C. v. CenturyLink, Inc.*, No. 2:14-CV-965-JRG-RSP, 2015 U.S. Dist. LEXIS 134038, at *8-9 (E.D. Tex. Aug. 14, 2015). This case is an example of one in which claim construction is likely to resolve critically important questions that bear on subject matter eligibility.

*Second*, the Court believes further briefing is necessary because GIA has not sufficiently established that claim 1 (on which GIA's arguments are based) is representative of the other asserted claims. GIA spends less than two pages on the other sixteen asserted claims. Dkt. No. 46 at 12, 17. GIA's descriptions of the similarities and differences between the other asserted claims are cursory.  When the movant relies on a representative claim in its § 101 analysis, it bears the burden of showing that the other asserted claims are "substantially similar and linked to the same abstract idea." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). District courts have denied motions to dismiss where the movant failed to carry this burden. *See JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, Case No. 16-cv-212-GMS, 2016 U.S. Dist. LEXIS 119811 at *7 (D. Del. Sept. 6, 2016) ("Fluidmesh fails to provide meaningful analysis for each of the challenged patent claims at issue"). Deferring consideration of subject matter eligibility to the summary judgment stage will provide GIA with

an opportunity to rectify this apparent deficiency.

*Third*, DGT leans heavily on the presumption of validity, arguing that this presumption applies and that GIA must prove the asserted claims are patent-ineligible by clear and convincing evidence. Although subject matter eligibility is a question of law, some courts have held that the presumption of validity applies to any subsidiary fact questions involved in the § 101 analysis. *See, e.g.*, *Communique Lab., Inc. v. Citrix Sys.*, No. 1:06-cv-253, 2015 U.S. Dist. LEXIS 170195, at *18 (N.D. Ohio Dec. 21, 2015) ("In this Court's view, the most reasoned approach is to apply the clear and convincing evidentiary standard of proof to invalidity defenses under § 101 to the extent that analysis involves underlying factual issues, but not to the purely legal portion of the § 101 analysis."). The Supreme Court and the Federal Circuit have not decided whether and to what extent the presumption of validity applies to § 101. Recent concurring opinions have reached seemingly contradictory conclusions. *Compare Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (Mayer, J., concurring) (citations omitted) *with CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1284 (Fed. Cir. 2013) (en banc) ("all issued patent claims receive a statutory presumption of validity. . . . that presumption applies when § 101 is raised as a basis for invalidity in district court proceedings") (Lourie, J., et al., concurring).

The Court would benefit from further briefing on this unsettled and potentially important question. In particular, neither party addresses the language and legislative history of the relevant statues. For example, § 282(a) states that a "patent shall be presumed valid" and § 282(b)

provides that the "following shall be defenses in any action involving the validity or infringement of a patent . . . [i]nvalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability." 35 U.S.C. § 282. Part II of Title 35 includes § 101, which would seem to suggest that the presumption of validity applies to § 101. However, only § 102 and § 103 are labeled "conditions for patentability." This may evince an intent to exclude § 101 from the scope of the § 282 presumption. Additional briefing will assist the Court in correctly resolving this question.

For the foregoing reasons, the Court recommends denying GIA's 12(c) Motion.

GIA is granted leave to file a motion for summary judgment under § 101. The motion should be filed after the *Markman* hearing set for September 29, 2016 but before the dispositive motion deadline (presently January 31, 2017).

### III. CONCLUSION

AGS and AGSL's Notice of Joinder (Dkt. No. 52) is **DENIED AS MOOT**.

The Court **RECOMMENDS** that GIA's Motion for Judgment on the Pleadings (Dkt. No. 46) be **DENIED** and that GIA be granted leave to file a motion for summary judgment on § 101 grounds.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by September 22, 2016 shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.

Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 12th day of September, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE